366 F.2d 497
 John F. BRYAN, Jr. and Lester N. Hambrick d/b/a Trakwork Equipment Company, Appellants,
v.
Royce KERSHAW et al., Appellees.
Royce KERSHAW et al., Appellants,
v.
John F. BRYAN, Jr. and Lester N. Hambrick, d/b/a Trakwork Equipment Company, Appellees.
 No. 23017.
 United States Court of Appeals Fifth Circuit.
 September 27, 1966.
 Rehearing Denied November 2, 1966.
 
 D. Carl Richards, Richards, Harris & Hubbard, William D. Harris, Jr., Dallas, Tex., for John F. Bryan, Jr. and Lester N. Hambrick, doing business as Trakwork Equipment Co.
 Fred Ball, Montgomery, Ala., Gordon H. Rowe, Jr., Dallas, Tex., Leachman, Gardere, Akin, Porter & DeHay, Dallas, Tex., for Kershaw Manufacturing Co.
 Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.
 THORNBERRY, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Northern District of Texas enjoining appellants, Bryan and Hambrick, from duplicating or using to commercial advantage until September 21, 1966 a "railroad track undercutter of the type having a self-loading feature" which they had built. Appellee Kershaw Manufacturing Company, hereafter referred to as Kershaw, attacks by cross-appeal the limited duration of the injunction.
 
 
 2
 Kershaw is a manufacturer of railroad maintenance equipment. Prior to this action, it had developed a "railroad track undercutter with a special self-loading feature." At the time of such development, appellee Bryan was employed by Kershaw as chief engineer of research and development of railroad equipment and was familiar with the undercutter and all aspects of its development. The Kershaw undercutter is a sizeable, complex, and expensive machine that required four to five thousand man-hours for its development. In May, 1963, a subsidiary of Kershaw leased a number of the undercutters to various railroad companies. In early 1964, appellant Hambrick, having recently entered the railroad maintenance field, attempted unsuccessfully to purchase a Kershaw undercutter. Subsequently, Hambrick persuaded Bryan to come to work for him and to design similar machinery. Upon termination of his employment with Kershaw, Bryan agreed not to encroach upon Kershaw's developments in the off-track field, and in turn was told that he was free to pursue application of his "own ideas." Bryan immediately began the design of an on-track undercutter found by the district court to be "substantially and functionally the same as the Kershaw undercutter" although not a "Chinese copy."[1]
 
 
 3
 Upon suit by Kershaw, the district court, sitting without a jury, found that the development and design of the Kershaw undercutter were trade secrets, that Bryan obtained knowledge of the same under circumstances from which he should have reasonably concluded that Kershaw desired such secrets to remain confidential, and that he made use of this knowledge in the development of the Hambrick undercutter in breach of confidence. From these facts, the Court concluded that Kershaw was entitled to relief and enjoined Bryan and Hambrick from duplicating, using or selling their undercutter until September 21, 1966, the injunction running for the time found necessary to remove the competitive advantage gained through the illegally used trade secrets. For the reasons set out below, we AFFIRM.
 
 I.
 
 4
 Appellants raise objections to numerous findings of fact made by the court below. The evidence in the record reveals that all factual contentions raised were hotly contested and supported by considerable evidence on each side. It is a settled rule of appellate review that factual findings must stand on appeal unless clearly erroneous. Thus, the reviewing court should reverse only when, after a careful examination of the entire record, it is left with a firm conviction that a mistake has been committed and injustice done. Glasscock v. United States, 4th Cir. 1963, 323 F.2d 589; Cedillo v. Standard Oil Co., 5th Cir. 1961, 291 F.2d 246, cert. denied 368 U.S. 955, 82 S.Ct. 397, 7 L.Ed.2d 387; Squirrel Brand Co. v. Barnard Nut Co., 5th Cir. 1955, 224 F.2d 840, cert. denied 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860. Furthermore, the burden assumed by the party attempting to show such mistake is especially strong where the findings are primarily based upon oral testimony and the trial judge has viewed the demeanor and judged the credibility of the witnesses. Horton v. United States Steel Corp., 5th Cir. 1961, 286 F.2d 710; Galena Oaks Corp. v. Scofield, 5th Cir. 1954, 218 F.2d 217.
 
 
 5
 Appellants claim that the trial court erred in finding that Bryan breached an obligation of confidence owed to appellee. Furthermore, appellants assert that this determination is a conclusion of law and not a finding of fact, and therefore it is not protected by the clearly erroneous standard upon review. Notwithstanding this contention, we feel that the finding of a breach of confidence is one of ultimate fact and that the finding made is neither clearly erroneous, nor based upon an incorrect view of the Texas law.
 
 
 6
 Appellant Bryan, during the development of the Kershaw undercutter, was head of research and development at Kershaw, took part in all phases of the machine's development, and was familiar with its market potential. Evidence was presented showing that Bryan orally agreed as a condition of employment that all ideas developed while he was an employee would be the property of Kershaw. It is also clear from the record that Bryan was aware of Kershaw's willingness to protect his development rights through resort to the courts. From such evidence the trial judge reasonably found that Bryan knew or should have known that Kershaw considered his knowledge of the undercutter confidential.
 
 
 7
 The other contested findings of fact made by the trial judge likewise find ample support in the record. Being ever mindful of the proper function of the Courts of Appeal when reviewing fact findings of the trial court, we cannot say that any here subject to attack are clearly erroneous.
 
 II.
 
 8
 Because of the view we take concerning the correctness of the judgment as to each appellant, it will aid clarity if we discuss separately the cases against Bryan and Hambrick. It is important to note that this controversy is in the federal courts solely by virtue of our diversity jurisdiction. The duty thus rests upon us to decide the substantive issues under the applicable local law — in this case the law of Texas. 28 U.S.C. § 1652; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Ruhlin v. New York Life Insurance Co., 1939, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.
 
 The Injunction Against Bryan
 
 9
 As stated earlier, the trial court was warranted in finding that Bryan knew or should have known that the information acquired by him while in Kershaw's employ was confidential. Appellants assert, however, that Bryan's duty to refrain from making use of this information ceased when the Kershaw undercutter was made public. Thus, they reason, there was no breach of confidence and no basis for injunctive relief. This, we conclude after thorough research, is not the Texas law. We hold that where an employee has in confidence gained information concerning a machine incorporating trade secrets and has divulged or attempts to divulge the same after the device has become public by some other means, the Texas law labels such conduct a breach of confidence and will enjoin the reaping of benefits therefrom. While the Supreme Court of Texas has not been faced with this exact fact situation, a Court of Civil Appeals has decided a case in point, Atlas Bradford Co. v. Tuboscope Co., Tex.Civ.App. 1964, 378 S.W.2d 147. In holding the employee vulnerable to injunctive relief, the court stated:
 
 
 10
 [W]here one, as a result of a confidential relationship, gains knowledge of the "trade secret" of another, prior to its being patented, and while it is still a "trade secret"; and after the matter has been patented, uses or discloses the information, our courts deny him resort to the patent on the theory that a person's wrongful acts may deprive him of the right which he would otherwise have as a member of the public (emphasis in the original). Id. at 149.
 
 
 11
 A federal court is not compelled in all instances to follow the decisions of an intermediate state court on questions of local law. However, in the absence of strong indications that the state's highest court will not adopt the same view, such holdings are to be considered determinative. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; National Surety Corp. v. Bellah, 5th Cir. 1957, 245 F.2d 936.
 
 
 12
 Language in recent Texas Supreme Court cases further supports the view that appellant Bryan was properly enjoined. Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763, and K & G Oil Tool and Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W. 2d 782, are companion cases decided by the Texas court in 1958. In K & G Oil Tool, the defendant licensee gained confidential information through the licensing relationship and later appropriated such knowledge to its own use. Whether the information thus appropriated constituted a trade secret was hotly contested. The Texas Supreme Court, however, clearly stated that the breach of confidence and the damage caused thereby, not a continuing existence of complete secrecy of the information, was the controlling issue. In support of this view, the court cited with approval an opinion of the United States Court of Appeals for the Seventh Circuit.[2]
 
 
 13
 How did defendant learn of plaintiffs' design?
 
 
 14
 And this, we regard as the proper test.
 
 
 15
 * * * * *
 
 
 16
 It is unquestionably lawful for a person to gain possession, through proper means, of his competitor's product and, through inspection and analysis, create a duplicate, unless, of course, the item is patented. But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain information in usable form and escape the efforts of inspection and analysis. 314 S.W.2d at 787-788.
 
 
 17
 In Hyde Corporation v. Huffines, supra, a licensor sued to enjoin his licensee from appropriating to his own use information concerning mechanical features of the licensor's invention. During the pendency of the suit, the information was made public through issuance of a patent. The Texas court held that the licensee could be enjoined. As in K & G Oil Tool, it is apparent that the gravamen of the holding was the breach of confidence and not the presence or absence of continued secrecy of the information subsequent to the establishment of the confidence.
 
 
 18
 In light of the holding of the Court of Civil Appeals and the language of the two Texas Supreme Court cases discussed, we hold that under Texas law appellant Bryan was properly enjoined.
 
 The Injunction Against Hambrick
 
 19
 The Texas law as to the vulnerability of a subsequent employer to injunction is not as readily ascertainable. The Texas Civil Appeals decision discussed above might indicate that Hambrick cannot be enjoined. However, we feel that there is convincing evidence that Texas' highest court would not follow that decision if presented with the facts of the present case.
 
 
 20
 First: The two-page opinion of the civil appeals court in Atlas does not set out in any detail the factual circumstances of the controversy involved. This is particularly true concerning the relation between the breaching employee and his new employer. Did the latter woo the employee away from his original employer? Did he do so in an effort to gain the specific knowledge confidentially disclosed to the employee? Or was the new employer entirely free of any connection with the circumstances of the employee's breach? As the Texas Supreme Court expressly stated in Hyde, the issuance of an injunction in cases such as this depends largely upon the facts of the particular case.[3] In view of the failure of the Texas Civil Appeals Court to adequately lay a factual predicate for its conclusion that the new employer may not be enjoined, it is difficult to attribute precedential value to that holding. This assessment is further substantiated by the fact that the court cited no authority in support of its conclusion as to the new employer.
 
 
 21
 Second: There are strong indications in both Hyde and K & G Oil Tool that the Texas Supreme Court would enjoin Hambrick upon the facts of the present case. In Hyde, the court discusses the propriety of running an injunction beyond the date of disclosure by patent and states:
 
 
 22
 [T]he licensee who had abused a confidence would thus obtain a marketing advantage or head start as compared to the patentee or any manufacturer or processor licensed by him after the issuance of the patent. 314 S.W.2d at 773.
 
 Later in the opinion the court continues:
 
 23
 One who has obtained prior knowledge of a device in confidence may well establish a manufacturing head start, so to speak. He may not and often does not stand on the basis of economic equality with competing manufacturers or the public at large at the date of the public disclosure of the claims in the patent application. For this reason relief by way of injunction should not arbitrarily be denied because the trade secrets contained in an application for a patent have been made public. 314 S.W.2d at 778.
 
 
 24
 This language indicates that the creation of a marketing advantage by virtue of a breach of confidence weighs heavily in favor of injunctive relief. Indeed, it can be said that the unfair advantage gained is the damage that the injunction is designed to cure. The trial court in the instant case found that Bryan's breach of confidence resulted in a competitive advantage for Hambrick. The express purpose of the injunction was to remove that advantage.
 
 
 25
 Language in K & G Oil Tool is also instructive. This is especially so because of several similarities between the facts in that case and the present case. In K & G Oil Tool, the Texas court found that the oil well fishing tool involved was a complicated device. As in the case at hand, the device had been leased prior to the breach of confidence. Furthermore, the jury found in response to a special issue that the confidential information divulged could have been obtained by examination of the tool. Because of this finding, the Texas Civil Appeals Court denied injunctive relief. The Supreme Court of Texas reversed, holding that this public availability did not remove the illegality of the actual method by which the information was gained. Implicit in the court's line of reasoning is a recognition that the placing of a machine in the public domain does not necessarily remove the advantage to be gained from use of confidential information concerning its design and development. This same recognition is apparent upon the face of the record in the present case as the trial judge found a competitive advantage in spite of a prior placing of the undercutter on the public market. Viewing the record and the findings as a whole, it is evident that the trial judge felt the Kershaw undercutter possessed characteristics entitled to protection despite its public exposure, and that the presence of an unfair competitive advantage controlled her judgment. We feel that the reasoning of the Texas court in K & G Oil Tool supports this conclusion.[4]
 
 
 26
 Still further support may be gained from the language of K & G Oil Tool. In support of its holding, the Texas court cites with approval and quotes at length numerous cases from other jurisdictions, both federal and state. Of particular interest is the following quotation from A. O. Smith Corp. v. Petroleum Iron Works Co., 6th Cir. 1934, 73 F.2d 531, 538:
 
 
 27
 The mere fact that the means by which a discovery is made are obvious * * * cannot * * * advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtain the desired knowledge without himself paying the price in labor, money, or machines * * *. (Emphasis added.) 314 S.W.2d at 788.
 
 
 28
 A further quotation from the Smith case is instructive:
 
 
 29
 The defendant had sought in many ways to obtain the knowledge necessary to enable it to compete successfully with the plaintiff in the making of pressure vessels. It finally engaged Hawthorne, who for many years had been employed in the plaintiff's welding department, and who was under express contract not to divulge any information received by him during his confidential relationship to the plaintiff. The conclusion is inescapable that the defendant knew of Hawthorne's employment in a confidential capacity. 73 F.2d at 539.
 
 
 30
 Thus the language quoted by the Texas court arose in the context of a factual situation similar to the one at hand. It involved an injunction against a new employer as well as the employee in whom confidence was actually reposed. It can hardly be doubted that Hambrick was "a beneficiary of a broken faith," even if the actual breach was not his personal act.
 
 
 31
 One further aspect of K & G Oil Tool should be noted. The defendant licensee in that case was a partnership. Not all of the partners were personally involved in the breach, and the non-breaching partners argued that they could not be enjoined as individuals for the wrongful acts of their partners. The court, realizing the futility of restraining only those who actually were involved in the breach, refused to modify the trial court's total injunction. In the instant case, Hambrick's business, a sole proprietorship, received the profit of Bryan's breach. The same futility would result from a partial injunction in this case as would have resulted in the Texas case. We feel confident that the Texas court would agree.
 
 
 32
 Third: Our holding is supported not only by language in prior opinions of the highest Texas court, but also by logic and equitable reasoning. It is clearly the Texas law that Bryan was properly enjoined. In the face of such a determination, and in light of the purpose of the injunctive relief, it would be a vain act indeed to allow Hambrick to reap the benefits of the illegally gained competitive advantage. To enjoin Bryan alone at this stage would offer no protection whatsoever when protection is clearly called for. To allow Hambrick to go unrestrained because of a lack of privity between him and Kershaw would be to allow narrow technicalities here to defeat the very purpose of equitable relief. Surely a court of justice is not so easily distracted.
 
 
 33
 We have given due consideration to the other points of error raised by appellants and consider them to be without merit.
 
 III.
 
 34
 We now turn to a consideration of appellee's cross-appeal complaining of the limited duration of the relief granted. Appellee asserts that the trial judge was not free to grant such relief since only a permanent injunction was expressly prayed for in his petition. He claims that under Texas law only such equitable relief may be granted as is specifically prayed for, and that the trial judge was bound to follow local law.
 
 
 35
 Even if the appellee's interpretation of the Texas law be correct, we do not deem it controlling. The federal courts have struggled long and hard with problems concerning classification as substance or procedure for purposes of the Erie doctrine. Appellee's contention, is nothing more than an attack upon the sufficiency of the pleading. Questions of this nature are determined by federal, not local law. E. g., Ordner v. Reimold, 10th Cir. 1960, 278 F.2d 532; Mueller v. Rayon Consultants, Inc., D.C. N.Y. 1959, 170 F.Supp. 555; 1 Barron & Holtzoff (Wright ed.) § 138. Furthermore, the question of the trial judge's authority to award the relief granted is controlled by the recent United States Supreme Court opinion in Hanna v. Plumer, 1964, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8. That case involved a direct conflict between a federal rule and a state rule concerning the proper method of service of process. The Court, in holding that the federal rule controlled, stated:
 
 
 36
 Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules. * * * "When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." * * * Thus, though a court, in measuring a Federal Rule against the standards contained in the Enabling Act and the Constitution, need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts, * * * it cannot be forgotten that the Erie rule, and the guidelines suggested in York, were created to serve another purpose altogether. To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act. Id. at 473-474, 85 S.Ct. at 1145, 14 L.Ed.2d at 18.
 
 
 37
 In the case at hand there is a conflict between federal and state rules as to the requirements of pleading. Federal rule 54(c) provides in part:
 
 
 38
 Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.
 
 In contrast, the Texas rule requires that:
 
 39
 The judgment of the court shall conform to the pleadings * * *. Tex. Rule Civ.Proc. 301.
 
 
 40
 We hold that the stricter requirements of pleading evidenced by the Texas rule and practice are not controlling in the federal courts and the trial court's decree was soundly based upon its powers under the federal rule.[5] The judgment in all parts is accordingly affirmed.
 
 
 
 Notes:
 
 
 [1]
 Chinese Copy: an exact imitation or duplicate made without discrimination reproducing defects as well as desired qualities. Webster's Unabridged Third New International Dictionary (1964)
 
 
 [2]
 Smith v. Dravo Corporation, 7th Cir. 1953, 203 F.2d 369
 
 
 [3]
 314 S.W.2d 763, 778 (1958)
 
 
 [4]
 This point would have been clearer if the trial judge had expressly found that the information illegally divulged had not entirely lost its trade secret aspects through the marketing of the undercutter by Kershaw. Viewing the record as a whole, however, we do not feel that the lack of such an express finding calls for reversal
 
 
 [5]
 The trial court's decree is further supported by the following language in Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L. Ed. 2079:
 State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. Contrariwise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it. 326 U.S. at 106, 65 S.Ct. at 1468-1469, 89 L. Ed. at 2084.