Jody E. FRANKS, Plaintiff-Appellee,

v.

NATIONAL DAIRY PRODUCTS COR-PORATION, Defendant-Appellant.

No. 26441.

United States Court of Appeals
Fifth Circuit.

July 10, 1969.

Rehearing Denied Aug. 8, 1969.

See also, D.C., 41 F.R.D. 234.

William L. Garwood, Austin, Tex., J. Fraser Humphreys, Jr., Memphis, Tenn., for appellant, National Dairy Products Corporation; Graves, Dougherty, Gee, Hearon, Moody & Garwood, Austin, Tex., Lawler & Humphreys, Memphis, Tenn., of counsel.

Don L. Davis, Byrd, Davis, Eisenberg & Clark, Tom H. Davis, Austin, Tex., for plaintiff-appellee.

Before THORNBERRY and AINSWORTH, Circuit Judges, and DAWKINS, District Judge.

THORNBERRY, Circuit Judge:

This is an appeal from a judgment of the district court awarding damages to plaintiff-appellee for injuries caused by an "explosion" of shortening manufactured by appellant. Appellant argues that reversible error was committed on two points: (1) The trial court's findings were clearly erroneous because based on insufficient evidence and because induced by an erroneous view of the law; and (2) the district erred in admitting alleged hearsay evidence. We affirm.

Appellee Jody Franks was the owner and operator of Jody's Big Burger drive-in restaurant. Franks had purchased Kraft's Red Label shortening for use in his deep-fry cooker since 1958 and was using that brand at the time of the accident in August, 1963. Red Label is manufactured by appellant, National Dairy Products Corporation, and is widely distributed for commercial use. On August 7, 1963, Franks decided to drain his deep-fry cooker of the shortening that had been in it for about three days, and to re-fill it with fresh shortening. Following his usual procedure, he turned off the fryer and let it cool for about three or four minutes. He then drained the shortening into an empty Red Label container that he had washed out several days earlier. After talking to a customer for a few minutes, Franks walked over to the can of shortening. As he reached over the can to see if all the grease had been drained, the hot grease splattered with a loud noise, covering his hands, arms, face and shoulders.

## I.

The case was tried to the court, and the judge held appellant liable for the injuries caused by the splattering grease under Section 402A of the Restatement of Torts, as embodied in the applicable Texas substantive law. See McKisson v. Sales Affiliates, Inc., Tex.Sup.Ct.1967, 416 S.W.2d 787. The trial court found that appellant was engaged in the business of selling Red Label shortening; that appellee was an intended user, one the manufacturer should have reasonably expected to use its product; that appellee negatived improper use or handling; and that appellee negatived causes of the accident other than the product's own defective condition.[1] Appellant argues that the last two findings are clearly erroneous under the evidence and the applicable principles of law.

Under Rule 52(a) of the Federal Rules of Civil Procedure, findings of fact by the trial court will not be set aside on appeal unless they are clearly erroneous. The appellate court is not to substitute its judgment for that of the trial court where there is substantial credible evidence to support the court's findings. Sanders v. Leech, 5th Cir. 1946, 158 F.2d 486. The lower court's findings may be reversed as clearly erroneous only when "the force and effect of the testimony considered as a whole convinces that the finding * * * does not reflect or represent the truth and right of the case," Sanders v. Leech, *supra,* or when the reviewing court is left "with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct.

525, 542, 92 L.Ed. 746. Findings of fact may also be set aside if they were induced by an erroneous view of the law. Chaney v. City of Galveston, 5th Cir. 1966, 368 F.2d 774. Our inquiry, then, is whether the trial court's findings were (1) based on substantial evidence, and (2) based on a proper view of the law.

Appellant contends that there is no—or at least insufficient—evidence of a defect in its product which was the cause of the "explosion" and resulting injuries to appellee. There was expert testimony to the effect that shortening itself could not explode and that the only logical explanation for the splattering of the grease was that it contained a foreign element, such as water. The witness explained that water can "superboil," that is, remain in a liquid state at a temperature above 212 degrees, and that when it finally does turn to steam it does so very rapidly and violently, causing an "explosion" and loud noise. Thus if even a small amount of water were in the shortening, its transition from liquid to steam might cause an explosion that would splatter the grease.

Appellant essentially argues that there must have been water or a similar liquid in the can of drained shortening or else there would have been no explosion. Since water particles are usually present in refrigerated foods, appellant implies that water from a piece of food in the drained grease caused the explosion. Or perhaps, insists appellant, there was water in the can before the shortening was drained into it. Since the plaintiff has the burden of proving that the product has been properly handled and has not

---

1. Section 402A of the Restatement of Torts states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

been substantially changed since it left the manufacturer's hands, appellant argues that appellee had the burden of proving that there was no water in the hot grease and that he failed to meet that burden. There was, however, testimony by the appellee which tended to negate the presence of foreign elements in the shortening. Appellant's handbook recommended that the shortening be filtered through a mechanical device or several thicknesses of cheesecloth every day. Appellant's expert testified that a can of Kraft shortening, properly drained, could last almost indefinitely. Appellee used as a strainer a metal screen filled with holes approximately 5/32 of an inch in diameter, and he normally replaced used shortening with new shortening every four days. Further, appellee testified that the can was dry when he started to drain the grease into it on the night of the incident in question. On the basis of this evidence, the trial judge found that appellee had negatived improper use or handling and that there was no water or foreign liquid in the container at the time of the explosion.

■ It is not our task to re-try the facts of the case; this is especially true where the lower court's findings are based on oral testimony and the trial judge has viewed the demeanor and judged the credibility of the witnesses. Bryan v. Kershaw, 5th Cir.1966, 366 F. 2d 497. It does not help appellant that its expert witness testified that the explosion could not have occurred but for the presence of water or a similar liquid. The trial court was not bound to accept the opinion of the expert witness but, rather, had a right to use his own common sense and experience and to draw all reasonable inferences from the physical facts and occurrences. Cf. Remington Arms Co., Inc. v. Wilkins, 5th Cir.1967, 387 F.2d 48. Having reviewed the record, we hold that the trial court could have reasonably concluded from the evidence that the appellee negatived improper use or handling and that he negatived causes for the explosion other than the product's defect (by showing that there was no water in the hot grease), and therefore we must uphold his findings on those matters.

Appellant further argues that the district court's findings were clearly erroneous because induced by a mistaken view of the law. More specifically, appellant claims that it was improper for the trial court to infer a defect in its product merely on the basis of the circumstantial evidence offered at the trial because by so doing the trial judge in effect shifted the burden of proof to the defendant to explain just how and why the explosion occurred, and applied the doctrine of res ipsa loquitur or its equivalent to a case to which it could not properly be applied, under Texas law. In essence, appellant alleges that a specific defect was not proved and therefore, under the applicable law, appellee was not entitled to a recovery.

Admittedly, a specific defect was not proved, and the trial court's reasoning on the finding of a defect is evident in the following language:

Under the Jakubowski [Jakubowski v. Minnesota Mining & Mfg. Co., 1964, 42 N.J. 177, 199 A.2d 826] reasoning, it is further necessary for the plaintiff to negative causes of the explosion other than the product's defective condition. It appeared from the testimony that there could have been three possible causes for the explosion. Defendant's primary reliance was on the explanation that there was either water or other similar liquid in the bottom of the container when plaintiff started the draining process. This Court found above that there was no such water or liquid present. Conceivably there could have been some type of foreign solid in the shortening; however, plaintiff's proper use * * * of the shortening indicates that this was not the case. This Court concludes that the only explanation for the explosion which injured plaintiff is that there was some defective condition in the product itself. This is the only inference which is reasonable under the circumstances * *.

What we have is a manufacturer's expert who expresses the opinion that an object will not explode in the absence of a foreign substance such as water. Once it is determined by the factfinder that there was no foreign substance, the manufacturer's defense is revealed to be simply that there was no explosion. As to this fact, there can be no quarrel: in our case there was an explosion.

It is this reasoning to which appellant objects. There is, however, ample authority under Texas law to support the reasoning of the district court. In Coca Cola Bottling Company of Houston v. Hobart, Tex.Civ.App.1968, 423 S.W.2d 118 (writ ref'd n.r.e.), the defendant contended that there was a lack of evidence to justify "the conclusions that the bottle was defective * * * because a specific defect was never identified." The court rejected this contention and stated:

> The proof of a defect in the bottle * * * was clear enough. The bottles were not abused after their purchase from Henke. Plaintiff * * * exerted only slight pressure upon the bottle with the opener at the time she attempted to open it, and the bottle broke and cut her finger. We believe that under such circumstances, proof of a defect is adequately established. When one makes ordinary and reasonable use of a product in a manner anticipated by the seller and is injured by an identifiable imperfection [the only "identifiable imperfection" was the fact that the bottle broke] therein, the proof is sufficient on this point.

The court further stated that it was not necessary for plaintiff to identify the specific engineering or structural defect. See also Sharp v. Chrysler Corp., Tex. Civ.App.1968, 432 S.W.2d 131 (writ ref'd n.r.e.) ; Ford Motor Co. v. Grimes, Tex.Civ.App.1966, 408 S.W.2d 313 (writ ref'd) ; Sam White Oldsmobile v. Jones Apothecary, Inc., Tex.Civ.App.1960, 337 S.W.2d 834 (writ ref'd n.r.e.).

This Court upheld a liability judgment based on circumstantial evidence in the Texas-based diversity case of Dement v. Olin-Mathieson Chemical Corp., 5th Cir. 1960, 282 F.2d 76. In that case, a dynamite cap exploded while being inserted, and plaintiff was seriously injured. Judge Brown stated that it was entirely reasonable to assume that the explosive charge when used under normal, contemplated circumstances would not prematurely explode in the absence of some serious defect. If such an unexpected explosion occurred, something serious had obviously gone wrong, and since it is reasonable to assume that such an explosion would not happen in the absence of negligence, an inference that it was due to the defendant's negligence is allowable. The specific defect need not be identified.

In the recent case of American Motors Corp. v. Mosier, 5th Cir.1969, 414 F.2d 34 [June 12, 1969], another Texas diversity case, the trial court held that the cross linkage tube of the plaintiff's automobile was defective and that such defect was the proximate cause of plaintiff's injuries. There was no explicit proof of a defect, and the trial judge based his findings on circumstantial evidence. This Court nevertheless approved the trial court's findings on the basis that they were not clearly erroneous.

This Court's holding in Remington Arms Co. v. Wilkins, 5th Cir.1967, 387 F.2d 48, an Alabama case, is instructive. The plaintiff recovered damages for personal injuries sustained when a cartridge manufactured by the defendant failed to fire and subsequently exploded upon ejection from a rifle. The defendant's expert witness testified that the occurrence described by the plaintiff was scientifically impossible. The manufacturer argued that plaintiff's testimony was therefore insufficient to raise an issue for the jury. This Court, however, upheld the verdict of the jury, stating: "The jury may well have agreed with the experts as to what would happen in the use of a non-defective cartridge but found itself unable to get around the fact that a cartridge

which should have fired instantaneously simply did not do it." *Id.* at 387 F.2d 54. It was proper, in other words, for the jury to view the evidence as a whole and conclude that "the cartridge irrefutably had to be defective or it would not have fired in the abnormal manner sworn to by the plaintiff." *Id.*

██ The foregoing cases establish that a defect can be inferred from unexplained occurrences. Here, there was a violent splattering of the hot grease. The evidence indicates that shortening will not explode unless defective, or unless some foreign substance has adulterated the product. The district court found that appellee handled the product properly and that he negatived other causes of the incident, such as the presence of water or a similar liquid. Thus, although there was no proof of a specific, identifiable defect, the trial judge concluded that a defect in the shortening was the cause of the splattering because such a defect is the only thing that could have caused the explosion. In short, the existence of a defect was the only reasonable inference that was left. The burden of proof was not thereby shifted: Appellee still had the burden of proving that the explosion was caused by a defect in appellant's product. It was not necessary, however, for appellee to show the specific defect in order to meet that burden. As we have shown, the trial judge's inference of a defect from circumstantial evidence was not improper under the applicable law. We therefore conclude that the trial court's finding of a defect, on the basis of the evidence presented, was not clearly erroneous and should be affirmed.

## II.

█ The second point for decision in this case concerns the question of hearsay evidence. Appellee had sent two samples of Kraft's Red Label shortening to a chemist for analysis; one sample was unused shortening and the other sample was composed of the used shortening involved in the explosion. Appellee was allowed to introduce in evidence the following deposition testimony of the chemist: "I was advised by a superior not to attempt to melt the sample [of used shortening], because of possible injury to myself or anyone else in the laboratory." Appellant argues that this was hearsay evidence and should have been excluded. When read in the context in which it was introduced, however, it is evident that the testimony came in by way of showing that the sample was in fact not melted, and was not introduced as evidence of a defect. Since it was not offered for the purpose of proving the truth of the matter asserted, it was properly allowed as evidence. See C. McCormick, Evidence § 225.

The judgment of the district court is affirmed.