**George FENNER and Catherine Fenner, his wife, Plaintiffs-Appellants,**

**v.**

**GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant-Appellee.**

**No. 79–2518.**

United States Court of Appeals, Fifth Circuit. Unit B

June 8, 1981.

---

Brent M. Turbow, Jacksonville, Fla., Podhurst, Orseck & Parks, Walter H. Beckham, Jr., Joel D. Eaton, Miami, Fla., Arthur Boone, Jacksonville, Fla., for plaintiffs-appellants.

Mathews, Osborne, Erlich, Gobelman & Cobb, Robert C. Gobelman, Jacksonville, Fla., for defendant-appellee.

Before RONEY, HILL and KRAVITCH, Circuit Judges.

PER CURIAM:

This personal injury products liability suit arises out of a single car accident which occurred in Palm Beach County, Florida. Plaintiffs sued the manufacturer, General Motors Corporation, alleging a defectively designed steering coupling permitted stone interference in turning the vehicle which proximately caused their accident. A jury awarded plaintiffs $250,000. The district court, however, granted General Motors' post-trial Rule 50, Fed.R.Civ.P., motion for judgment notwithstanding the verdict and, in the alternative, a new trial, on the ground that there was insufficient evidence to establish that the product defect proximately caused the accident. This appeal followed. We affirm the judgment notwithstanding the verdict.

The district court considered the motion for judgment n.o.v. under the standard set forth in the oft-quoted *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (*en banc*).

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Id.* at 374–75 (footnote omitted). The district court's careful and well-reasoned opinion reflects a proper appreciation of the considerations involved in overturning a jury verdict, in accordance with the law of this Circuit.

Neither party on appeal complains of any error in the admission of evidence. We therefore consider all the evidence which the district court charged the jury it could consider in deciding the case. *Spurlin v. General Motors Corp.*, 528 F.2d 612, 615 (5th Cir. 1976).

Based principally on Mr. Fenner's testimony, the evidence showed that in the early morning hours of December 15, 1972, Mr. Fenner and his wife left their hotel room in Pompano Beach, Florida. To get to the Florida turnpike, they traveled a short distance over a road under construction with loose gravel, potholes, and bumps. Mr. Fenner had driven on this road frequently over the past few days on business, always driving very carefully braking for the potholes and bumps.` Traveling northbound, plaintiffs stopped at the first service center for breakfast and to have the car serviced. The attendant checked under the hood but did not call attention to anything. Mr. Fenner noticed a certain stiffness in the steering from the time he had turned onto the turnpike; it was as though his wheels were out of alignment. He attributed this to his driving over the road under construction.

Upon leaving the service center, Mr. Fenner drove at approximately 60 miles per hour in the right-hand northbound lane. Traffic was light that morning. The road was straight and smooth. He passed one vehicle, turning left into the passing lane then turning back into the right-hand lane. Approaching another vehicle, Mr. Fenner pulled into the left-hand lane and passed the vehicle while driving straight ahead. When Mr. Fenner started turning the steering wheel to the right in order to return to the right-hand lane, the "steering jammed," according to his testimony, and the car veered to the left into the median. Plaintiffs' car struck an overpass abutment, causing substantial injury to them. Mr. Fenner stated that he had experienced no undue steering difficulties as he initially turned into the left-hand lane to pass the second vehicle. Only as he attempted to turn the wheel to the right did the steering difficulty occur.

Additional evidence revealed that for some weeks immediately after the accident Mr. Fenner had no memory of the accident or how it had occurred. During that period, he had speculated he had blacked out or some unknown mechanical difficulty with the car had been the cause of the accident.

There were two eyewitnesses to the accident who testified. Neither could say whether the Fenner vehicle appeared to be having steering difficulty. One of the eyewitnesses stated, however, that he observed a puff of smoke which appeared to come from the front left tire of the vehicle. The front left tire was flat on the car wreckage. He stated the car appeared to dip to the left before it went onto the median. The testimony of the other eyewitness, as well as that of the Florida Highway Patrolman who investigated the accident, shed no light on the cause of the accident.· The Fenner vehicle was unavailable for later examination.

Plaintiffs contend that their 1972 Oldsmobile Delta 88 contained an inherent defect in the steering mechanism which caused the accident. Plaintiffs showed at trial that the uncovered steering coupling of their model vehicle could suffer from stone interference if a stone lodged between the steering coupling and the vehicle's frame. This stone interference could cause the vehicle's steering to lock up. Plaintiffs then attempted to show this is what happened with their automobile.

The district court found, and it is not challenged on appeal, that the Fenner's car was manufactured with an inherent steering defect and that General Motors had knowledge of the defect. The court also found, however, that the evidence was not sufficient to create a jury question that the defect was the proximate cause of the accident.

■ Proof of the defect alone is insufficient. There must also be evidence that the defect caused the accident. *See Lowe v. General Motors Corp.*, 624 F.2d 1373 (5th Cir. 1980). In *Lowe*, this Court held the plaintiffs had established proximate cause. After passing another automobile, the car in which Mrs. Lowe was riding, a 1971 Chevrolet Impala, returned to the right-hand lane and straightened out. The car then angled to the left again and eventually overturned down an embankment. The injured driver told a witness that the car had suddenly become impossible to steer. The wrecker driver who towed the car away examined the car and determined the steering had locked. After a more careful examination, the wrecker driver and a state trooper found a stone lodged inside the steering coupling.

The evidence in *Lowe* to prove causation is simply not present in this case. As in *Lowe*, the car driver, Mr. Fenner, complained of steering lock up. Unlike *Lowe*, there was no examination of the Fenner's automobile and no stone discovered lodged inside the steering coupling. Plaintiffs attempted to prove their theory by Mr. Fenner's testimony and the testimony of an expert witness. Unfortunately, plaintiffs' theory is not supported by Mr. Fenner's facts according to the expert witnesses.

Plaintiffs' expert had conducted extensive tests using a mock-up of the steering column of the Oldsmobile model in question. He concluded that under certain conditions stone interference with the steering could occur. He testified in order for such interference to occur on a right turn there must have been a prior left turn, a noticeable change in the steering characteristics, and then the right turn and interference. When presented with a hypothetical question based on Mr. Fenner's version of the accident, plaintiffs' own expert expressed his opinion that Mr. Fenner's failure to be able to turn right was *not* due to stone interference since there was no indication by Mr. Fenner that any noticeable binding had occurred after the initial left turn into the passing lane.

One of defendant's experts, Mr. Flesher, whose deposition was read, examined testing done on the steering mechanism of the same model car as the Fenner's 1972 Oldsmobile. He stated the only way for rocks or gravel to get into a position where they could possibly drop into the steering coupling and interfere with the steering would be for the front frame crossmember to come into contact with the road surface and scoop up some gravel. This would be possible on roads under construction, he said, when one drives too fast over the road. The tires alone could not throw gravel and stones into the necessary position. He stated in his experience he had never observed stone interference when the wheel is turned to the right but it was theoretically possible.

Defendant's other expert, Mr. Sanderson, testified since the steering coupling is forward of the tires, they could not throw gravel into the necessary position to effect stone interference. He too said the front frame crossmember must strike the road and throw up the gravel. He also had never experienced any stone interference after a right turn although he admitted that it was not an impossibility. Like plaintiffs' expert, he opined that the failure to be able to turn right was not due to stone interference when presented with a hypothetical question based on Mr. Fenner's version of the accident.

Documentary exhibits admitted into evidence by the plaintiffs also indicate stone interference might occur only after a left turn and the front frame crossmember must strike the ground in order to scoop up gravel. *See, e. g.*, Plaintiffs' Exhibit Nos. 15, 24. Although various possibilities were suggested as the cause of the accident, there is no conflict among the experts as to what was not its cause based on Mr. Fenner's facts.

■ Without Fenner's automobile available for inspection, plaintiffs by necessity must prove causation by circumstantial evidence. This Court recognizes that a jury may properly reconstruct a series of events by drawing an inference upon an inference.

*See Smith v. General Motors Corp.*, 227 F.2d 210 (5th Cir. 1955). The inference relied upon, however, must be reasonable. An inference may be unreasonable if it is "at war with uncontradicted or unimpeached facts." *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841, 851 (5th Cir. 1967).

In this case, the jury was required to infer that the front frame crossmember of the Fenner's car struck the surface of the road under construction and scooped up gravel. Mr. Fenner's testimony was that he drove very carefully over the road, braking for potholes and bumps. The jury would have to infer that a stone was carried from the time the Fenners entered the turnpike then dropped into position to cause stone interference without a noticeable change in the steering after the left turn; that stone interference occurred while turning the steering wheel to the right; and that the stone interference caused the steering wheel to lock and the Fenner car to veer left into the median and the abutment. In order to reach this conclusion, the jury would have to disregard the evidence of other possible causes.

 Plaintiffs are not entitled to a verdict based on speculation and conjecture. *See Smith v. General Motors Corp.*, 227 F.2d 210 (5th Cir. 1955). The district court held the evidence in this case was so overwhelmingly in favor of the defendant that reasonable men could not arrive at a contrary verdict and granted defendant's motion for judgment n.o.v. The record supports that decision.

AFFIRMED.

KRAVITCH, Circuit Judge, dissenting:

Respectfully, I dissent. The majority affirms the trial court's grant of judgment notwithstanding the verdict on the ground that plaintiffs failed to prove that the admitted defect in the steering mechanism caused the accident. In my judgment, plaintiffs submitted sufficient evidence to create a jury question on the issue of proximate causation; the district court, therefore, erred in granting a JNOV.

George Fenner testified that as he was driving north on the Florida Turnpike, the steering "jammed," and his automobile veered to the left into the median and struck an abutment. It is undisputed that the Fenners' car was manufactured with an inherent steering defect (i. e., the possibility of stone interference) and that General Motors had knowledge of the defect. The issue at trial was whether this defect was the proximate cause of the accident.

Evidence at trial showed that General Motors was aware of the defect in Oldsmobile Delta 88 models and that the defect could be corrected by installation of an inexpensive shield device; it had not, however, warned the Fenners of the defect and potential danger. The car was totally demolished by the impact and was never returned to the Fenners. Unfortunately, both Fenners were severely injured and hospitalized. As a result, the car was not subjected to an auto autopsy to ascertain the possible presence of a stone. Moreover, as noted above, General Motors had not notified the Fenners of the possibility of stone interference; consequently, they had no reason to examine the steering mechanism for a stone before the automobile was disposed of.

Because the automobile was not inspected after the accident, the plaintiffs attempted to prove causation by circumstantial evidence. The majority concludes that in order to find that stone interference caused the accident, the jury must have engaged in speculation and conjecture. I disagree. In *Franks v. National Dairy Products Corp.*, 414 F.2d 682 (5th Cir. 1969), a products liability case, this court held that circumstantial evidence of causation is sufficient to present a jury question where the plaintiff has negated all other possible causes. General Motors asserts that the accident could have been caused by driver carelessness, a medical blackout, a blown tire, or any number of other causes. It did not, however, present any direct evidence that an event other than steering malfunction caused the accident. The majority notes that one witness observed a puff of smoke which appeared to come from the front left tire which was flat on the wreckage and that the car appeared to dip to the left. This was contradicted by testimony of an

eyewitness that the car did not dip to the left and by the state trooper who testified that the tire marks discounted the flat tire theory. This conflicting testimony created a question of fact for the jury.[1]

Mr. Fenner testified that he did not suffer a blackout nor did the tire blow out; rather, he stated that the steering locked for no apparent reason. Thus, through his testimony plaintiffs offered direct evidence that the steering malfunctioned. Mr. Fenner's credibility was for the jury to decide, not for the trial judge or this court. If the jury believed his testimony, the only inference necessary was that the admitted steering defect caused the steering malfunction. In the absence of evidence to the contrary, I find such an inference entirely reasonable, in fact more logical than the inference we upheld in *Franks*: here, the defect was proven; there, we permitted the fact finder to infer from circumstantial evidence both the existence of a defect in the product and that the defect caused the plaintiff's injuries.[2]

The majority emphasizes that the expert testimony is uncontradicted that stone interference could not have caused the accident. I do not find this testimony conclusive. Both defense experts conceded that stone interference could occur after a right turn; they concluded, however, that a stone could not have entered the steering coupling based on Mr. Fenner's facts. Plaintiffs' expert, in answer to a lengthy hypothetical question and based upon tests performed by him on a mock-up of the steering column similar to the Oldsmobile model, stated that the accident was not due to stone interference. He based this conclusion on the fact that no noticeable binding

occurred in the steering after his initial left turn. Plaintiffs' expert, however, conducted all of his tests on a model that was static and did not have power steering as did the Fenner vehicle. For that reason, his opinion would not be conclusive. Moreover, jurors are not bound to accept the uncontradicted opinions of expert witnesses, but have a right to use their own common sense and experience to draw all reasonable inferences from the physical facts and occurrences. *Remington Arms Co. v. Wilkins*, 387 F.2d 48 (5th Cir. 1967).

Hence, I find that plaintiffs submitted sufficient evidence to create a jury question as to the cause of the accident. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). Accordingly, I dissent.

---

1. See *Sosa v. Coleman*, 646 F.2d 991, 995 (5th Cir. 1981) (holding that under Florida law the issue of proximate cause is a factual question that must be submitted to the jury unless the facts are susceptible of only one inference).

2. The D.C. Circuit has held that in an automobile accident products liability case, a plaintiff may prove the existence of a defect by circumstantial evidence that 1) tends to negate causes for the accident other than a defect in the car; and 2) tends to show that the defendant-manufacturer introduced into the car whatever de-

fect that might have existed. *Stewart v. Ford Motor Co.*, 553 F.2d 130, 137 (D.C.Cir.1977). The amount of evidence necessary for these showings is not great. *Id.* Furthermore, the D.C. Circuit has held that a case may go to the jury not only on a specific theory that an identifiable automobile part had failed, but also on the basis of a general theory that some unpinpointed defect introduced into the automobile by the manufacturer was responsible for the accident. *Hall v. General Motors Corp.*, 647 F.2d 175, 179 (D.C.Cir.1980).