**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-30492
(Summary Calendar)

THOMPSON CORRUGATED SYSTEMS INC.; FREDERICK H. THOMPSON,

Plaintiffs-Appellants,

versus

J & L INDUSTRIES LLC; J & L DEVELOPMENT INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
(98-CV-213)

March 30, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

    This appeal concerns a commercial contract dispute in which there was no written contract.

For the reasons assigned below, we affirm.

---

    [*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

FACTUAL AND PROCEDURAL HISTORY

In 1992, Thompson Corrugated Systems, Inc., through its agent, Frederick H. Thompson (collectively "Thompson"), entered into an agreement with J & L Industries, Inc., a retail seller of industrial equipment, to serve as an independent sales representative. Although there was no written employment contract between Thompson and J & L Industries, Inc., there was a document entitled "sales representative agreement." This document stated that Thompson would be J & L Industries, Inc.'s independent Manufacturer's Representative and is the subject of Thompson's lawsuit. This document comprehended all paper converting machines that J & L Industries, Inc. manufactured, and it stated that there must be 180 days written notice of termination. It, however, stated no defined duration.

In 1995, J & L Industries, Inc., a Louisiana corporation, changed its name to J & L Development, Inc. J & L Development, Inc. then transferred all of its rights and obligations in connection with its folders/gluers (one of its specialty machines) to J & L Industries, LLC. It then merged with a Delaware corporation bearing the same name (J & L Development, Inc.). The two successor entities, J & L Development, Inc. and J & L Industries, LLC, share common owners, officers, directors, facilities, and conduct joint board and operations meetings. The corporate name change, transfer of rights and obligations, and merger had no effect on the agreement between Thompson and J & L Industries, Inc. concerning Thompson's status as an independent sales representative.

On April 11, 1997, J & L Industries, LLC offered Thompson a position as a Senior Territory Manager. Thompson, however, declined this offer on April 30, 1997. Thompson subsequently sold machinery on a commission basis for J & L Industries, LLC until May 21, 1997, when it withdrew

its offer to pay commissions to Thompson on sales of its equipment to selected customers. This communication effectively terminated the parties' business relationship.

Thompson filed suit for breach of contract. Thompson argues on appeal that it was deprived of commissions for five sales made from either J & L Industries, Inc., J & L Development, Inc., or J & L Industries, LLC, that occurred in its sales territory prior to the termination of its relationship with J & L. These sales were made to: 1) California Box Company ("California Box") that consisted of two additional modules to machinery previously purchased by the company; 2) International Paper ("International Paper"); 3) MacMillian Bloedel ("MacMillian Bloedel"); and 4) two sales to Lux ("Lux").

The district court made a number of credibility rulings and determined that there was an oral contract with J & L Management that 1) provided for a commission schedule and a territory and 2) covered the sale of specialty folder/gluers only and not the sale of other machines or equipment. It also found that there was no oral agreement regarding the 180 day termination notice and that commissions were due only on the sales of equipment from J & L Industries, LLC.

The district court subsequently determined that 1) no commission was due on the two Lux sales as well as the MacMillian Bloedel sale because the machines at issue were not specialty folder/gluers; 2) no commission was due on the International Paper sale because that machine was sold by J & L Development, Inc. instead of J & L Industries, LLC, and it found that the purchase price of the machinery was refunded after J & L Development, Inc. rescinded the sale; 3) Thompson was entitled to a commission in the amount of $23,632 for the sale of machinery to California Box, but the J & L entities were relieved from paying it because Thompson had entered into an unauthorized side agreement with California Box that reduced the sales price of the machinery, to the

3

detriment of the J & L entities and to the benefit of Thompson, and exceeded the commission to which Thompson would have ordinarily been entitled.

## DISCUSSION

We review a trial court's factual findings in a bench trial for clear error. Barfield v. Madison County, Miss., 212 F.3d 269, 271 (5th Cir. 2000) (citing Odom v. Frank, 3 F.3d 839, 843 (5th Cir. 1993)). However, "the construction of an unambiguous contract is reviewed *de novo,* but while interpretation of an unambiguous contract is a question of law, clear error is the standard of review when a district court uses extrinsic evidence to interpret an ambiguous contract." Tarrant Distrib., Inc. v. Heublein, Inc., 127 F.3d 375, 377 (5th Cir. 1997) (citations omitted).

The instant case presents such an ambiguous contract, as there was no explicit written contract evidencing the terms of the parties' agreement regarding the sales commissions owed to Thompson by all future and previous entities of J & L. The district court correctly found that the "sales representative agreement" was not a written contract because it was not signed by either party. LA. CIV. CODE. ANN. arts 1833, 1837 (West 2001). Moreover, the party to the document is listed as "J & L Machinery, Inc.," a company that does not exist. Thus, the trial court did not clearly err when it interpreted the parties' oral contract to cover only specialty folder/gluers, that commissions were due only on sales of equipment from J & L Industries, LLC, and that it did not comprehend the 180-day termination notice.

Thompson also presents on appeal a number of factual assertions rebutting the appellee's trial evidence as well as the trial court's credibility determinations of the evidence and its factual determinations. We note, however, that given the standard of review regarding a district court's factual determinations, we cannot hold that it clearly erred. See Franks v. Nat'l Dairy Prod. Corp.,

4

414 F. 2d 682, 685 (5th Cir. 1969) (stating that "[i]t is not our task to re-try the facts of the case; this is especially true where the lower court's findings are based on oral testimony and the trial judge has viewed the demeanor and judged the credibility of the witnesses")(citing <u>Bryan v. Kershaw</u>, 366 F. 2d 497 (5th Cir. 1966)).

CONCLUSION

Because we find that the district court did not clearly err, we AFFIRM its judgment.

AFFIRMED.