RESEARCH EQUIPMENT COMPANY, INC., Appellant,

v.

C. H. GALLOWAY AND SCIENTIFIC CAGES, INC., Appellees.

No. 5142.

Court of Civil Appeals of Texas, Waco.

Oct. 12, 1972.

Dillon, Giesenschlag & Sharp, Tom D. Giesenschlag, Bryan, Pravel, Wilson & Matthews, B. R. Pravel, Lester L. Hewitt, Houston, for appellant.

Arnold, White & Durkee, Robert A. White, Houston, A. W. Davis, Bryan, for appellees.

## OPINION

JAMES, Justice.

This is an injunction case, wherein the trial court after a nonjury trial on the merits enjoined the Defendant-Appellees from committing certain acts of unfair competition for a period of ninety days, from which judgment Plaintiff appeals. We affirm the trial court's judgment.

Plaintiff-Appellant Research Equipment Company, Inc., was a firm founded by one Dr. C. M. Patterson, a doctor of veterinary medicine, in 1963, and headed by him at all times material to this suit. The firm was established for the purpose of manufacturing aluminum cages primarily for medical and research laboratories and institutions.

Defendant-Appellee C. H. Galloway was first employed by Research Equipment for duties which included drafting from October 1963 to January 1965, his first period of employment being terminated by his having been laid off due to financial difficulties of the company. Galloway had had experience as a draftsman at the time he first went to work for Research Equipment, but had had no previous experience in designing or building animal cages. After having been laid off between January 1965 until the spring of 1967, Galloway worked in another job as a manufacturer's representative selling building products, and thereafter sold steel buildings in other employment. Then in the spring of 1967 he was again employed by Research Equipment doing drafting, designing, selling (working up to the position of sales manager), and in the latter period of his employment was a member of the board of directors. He was active in all areas of the business toward the end of his employment. He worked for Research Equipment during this second period of employment continuously from early 1967 until September 21, 1970, when he resigned. At the time Galloway resigned, he told Dr. Patterson that he intended to establish a competitive business, to which Dr. Patterson made no objection. Soon after his resignation, Galloway promoted and established a Texas corporation named "Scientific Cages, Inc.," for the manufacture and sale of animal cages competitive to Research Equipment. Suit was filed by Plaintiff-Appellant Research Equipment against Defendant-Appellees Galloway and Scientific Cages on May 21, 1971, exactly eight months after Galloway's resignation. Galloway was never employed by Research Equipment under any formal contract, oral or written.

At or about the time Galloway resigned his employment with Plaintiff-Appellant, Research Equipment's sales of animal cages went percentage-wise to the following categories of customers: 35% to straight-line Federal Agencies, such as the Department of Agriculture, Environmental Protection Agency, Food and Drug Administration, Armed Forces, and National Aeronautic and Space Administration; 50% to recipients of National Institutes of Health grants and other sources funds, such as university-associated research facilities, and other non-profit research facilities; while the remaining 15% went to commercial concerns, which would include firms such as pharmaceutical, chemical and other type companies. These aluminum cages which were manufactured and sold to these customers were used to house and keep animals such as primates (monkeys, baboons, etc.), rodents (rabbits, mice, and the like), dogs, and other animals which were used in scientific and experimental research.

Plaintiff-Appellant Research Equipment sued Galloway and Scientific Cages, alleging in effect that Galloway had acquired trade secrets from Plaintiff concerning the designing, manufacturing, and selling of the animal cages, and prayed for a permanent injunction against Defendants enjoining them from utilizing any of these trade secrets and from manufacturing and selling these cages in competition to Plaintiff. None of the trade secrets in question were the subject matter of any patents. In addition thereto Plaintiff sued for $65,000.00 actual damages, $25,000.00 exemplary damages, $12,500.00 attorneys' fees, and costs.

By stipulation of all parties, the injunction aspects of the case were severed from the money damages aspects, and trial on the merits was had before the trial court without a jury on only the injunction phase of the case.

On March 9, 1972, the trial court entered judgment granting an injunction, and five days later on March 14, 1972, the court entered another judgment denominated a "Substitute Injunction" which is recited to be for the purpose of clarifying the original judgment and which is recited to cancel, supersede, and replace the original judgment.

By this "Substitute Injunction", the trial court in effect:

(1) Enjoined both Defendants (Galloway and Scientific Cages) for a period of ninety (90) days from the date of said judgment from manufacturing, selling, soliciting orders, bidding, advertising and marketing aluminum rodent and primate cages of substantially the same type of cages theretofore manufactured by Plaintiff, with the exception that Defendants had the right to fulfill any existing contracts as well as contracts which might arise out of any formal bids theretofore submitted by Defendants prior to the entry of judgment, in either of which last-named events the Defendants would be enjoined 90 days after the fulfilling of such contracts;

(2) Perpetually enjoined Defendants from using Plaintiff's shop jigs or substantially similar jigs for the manufacture of cages of any type, except that Defendants were not enjoined from employing items and practices in customary use in machine, welding, and sheet metal shops;

(3) Defendants were not enjoined from manufacturing, exhibiting, advertising, bidding or selling cages made of stainless steel or galvanized steel of any type, or aluminum cages of any type other than for medical or research laboratories or institutions, or from submitting bids in response to formal bid requests from governmental agencies accompanied by complete plans and specifications; and

(4) Costs were assessed against the Defendants, and Plaintiff's suit for money damages was expressly left open for Plaintiff to pursue at a later time.

The trial court made Findings of Fact and Conclusions of Law pursuant to Rule 296, Texas Rules of Civil Procedure.

Plaintiff-Appellant Research Equipment appeals on seven points of error, which may be grouped for convenience of discussion under two heads as follows:

(1) By its first point, Plaintiff-Appellant says the trial court erred in limiting the duration of the injunction to ninety (90) days because there is no evidence to support such a holding, and that such holding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Plaintiff does not contend that the injunction should be perpetual, but says it should be at least three years. It further contends that since the trial court granted an injunction, that it should be perpetual unless Defendants assume and meet a burden of proof to show a period of time less than perpetual would be proper, citing Hyde Corp. v. Huffines (1958) 158 Tex. 566, 314 S.W.2d 763. We overrule this contention.

(2) By its points two through seven, Plaintiff-Appellant complains of the scope of the injunction; that is to say, that the trial court erred in placing the conditions, exceptions, and limitations on the injunction. We have carefully considered each of these points, and find them to be without merit.

For an excellent discussion of the rules of law governing injunctive relief as applied to the protection of trade secrets, see 31 Tex.Jur. 2, "Injunctions", par. 75, page 156.

The grant or refusal of an injunction is ordinarily within the sound discretion of the trial judge, and his action will be reversed only when a clear abuse of that discretion is shown. Repka v. American National Insurance Co. (1945) 143 Tex. 542, 186 S.W.2d 977. By that same token, it is equally well-settled that in the event injunctive relief is granted, it is within the sound discretion of the trial court to impose what he considers to be reasonable terms. Thames v. Rotary Engineering Co. (Tex.Civ.App., El Paso, 1958) 315 S.W.2d 589, error refused NRE.

In the case at bar, a careful examination of the record as a whole leads us to believe that the evidence is both legally and factually sufficient to support the trial court's imposition of a ninety-day injunction. For one thing, by the testimony of Dr. Patterson himself, Research Equipment was organized in June 1963, became interested in primate cages during the latter part of the summer of 1963, that it delivered a primate cage in October or early November of 1963, that it designed an improved primate cage about November of 1963, and delivered the improved product by January 1964.

The evidence throws additional light on the timetable required to get an animal cage business into competitive operation: Galloway resigned his employment from Research Equipment on September 21, 1970, at which time he told Dr. Patterson he was going into competition with him. Dr. Patterson voiced no objection. Galloway immediately promoted and organized Scientific Cages, Inc., and began to manufacture and market animal cages, and it was exactly eight months after Galloway's resignation when Dr. Patterson filed his suit (May 21, 1971) against Galloway and Scientific Cages. In other words, it was eight months before the impact of Galloway's competition came home to Dr. Patterson to the extent that he became concerned enough to file suit. From these facts manifest in the record the trial court might well have concluded that a ninety-day injunction against Defendants would be equitable to penalize them for whatever "head start" or "marketing advantage" Defendants might have had as a result of Galloway's employment with Plaintiff-Appellant. See Luccous v. J. C. Kinley Co. (Tex.1964) 376 S.W.2d 336; Hyde Corp. v. Huffines (1958) 158 Tex. 566, 314 S. W.2d 763 at p. 778, syls. 18 and 19.

Appellant strongly contends that it had accumulated very valuable trade secrets regarding the designing and fabrication of the animal cages, which were wrongfully appropriated and utilized by Galloway. In our opinion, the design and construction of these cages are based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced craftsman that might see one. Indeed, the evidence showed that some firms in only sheetmetal construction work made and sold some animal cages, firms that were not primarily in the animal cage business. The cages were openly exhibited and displayed at trade shows conducted for prospective purchasers, and copies of drawings and plans were often furnished by Plaintiff to prospective purchasers without any restrictions on their use. See Wissman v. Boucher (1951) 150 Tex. 326, 240 S.W.2d 278. Construction of these cages involved only the routine application of common skills and equipment in the field of metal working, consisting essentially of cutting, drilling, and welding. Likewise, any trade secrets the Plaintiff-Appellant may have had regarding customer information was not of great significance. Prospective purchasers of these cages were a well-defined class ascertainable from sources such as the membership Directory of the American Association of Laboratory Animal Sciences.

In short, the trial court was called upon to determine that period of time which would have been required for one having no background in the cage manufacturing business to launch such an enterprise. His decision to enjoin the Defendants for nine-

ty days is supported by substantial evidence, as hereinabove pointed out.

Likewise, we believe the qualifications, exceptions, limitations and conditions contained in the trial court's judgment were well within the range of the trial court's discretion, and we cannot say that in doing so he abused his discretion.

Judgment of the trial court is accordingly affirmed.

Affirmed.