**Affirmed in part, Reversed and Modified; Opinion Filed August 21, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00854-CV

**HALLIBURTON ENERGY SERVICES, INC., Appellant**
**V.**
**AXIS TECHNOLOGIES, LLC AND BRIAN WILKINSON, Appellees**

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-00267-D**

## OPINION

Before Justices Fillmore, Evans, and Lewis
Opinion by Justice Evans

In this trade secret misappropriation case, Halliburton Energy Services, Inc. appeals from the trial court's refusal to award it a permanent perpetual injunction against Axis Technologies, LLC and Brian Wilkinson after the jury found in favor of Halliburton on all its claims. Halliburton further challenges the trial court's failure to render a declaratory judgment in its favor on the issue of ownership of the property made the subject of the suit. We conclude the trial court erred in failing to award Halliburton all the relief it requested.

### FACTUAL BACKGROUND

Halliburton Energy Services, Inc. designs, manufactures, and sells products related to oil and gas exploration and production. Among the products made and sold by Halliburton are wellbore plugging devices. Brian Wilkinson worked for Halliburton from 1998 to 2008 in the business unit principally responsible for the design and manufacturing of the company's

wellbore plugs.  As a technician in that unit, Wilkinson was given access to highly confidential trade secret information including engineering drawings, materials specifications, and vendor information.

Wilkinson signed a contract entitled "Patent Agreement of Halliburton Company" as part of his employment with the company.  Under the Patent Agreement, Wilkinson agreed that, during and after the term of his employment with the company, he would not "use for himself or others, or divulge to others any secret or confidential information, knowledge, or data of Halliburton, obtained as a result of his employment."   In addition, Wilkinson agreed to disclose and assign the rights to anything he invented, in whole or in part, during his employment that related to company business.   Finally, Wilkinson agreed to deliver to Halliburton "all memoranda, notes, records, drawings or other documents made or compiled by him or made available to him while employed by [Halliburton] concerning any process, apparatus, or product manufactured, used, developed, investigated, or considered by [Halliburton]" upon termination of employment as "[Halliburton's] property."

Three months before Wilkinson left his employment with the company, he began taking company documents and using the company's confidential trade secret information to design and begin production of wellbore plugs for Axis Technologies, LLC.  Halliburton presented evidence that Wilkinson continued to obtain confidential information from another Halliburton employee after he left the company and, within three weeks after leaving, Wilkinson hosted a commercial demonstration of a wellbore plug he developed for Axis.  Axis ultimately sold over 1,300 wellbore plugs resulting in estimated revenues of $2.1 million and profits exceeding $500,000.

Halliburton brought this suit in January 2011 alleging claims against Wilkinson and Axis for misappropriation of trade secrets and breach of contract arising out of "a product or series of products known as the Axis 'BLACK' Bridge/Frac Plug" which Halliburton alleged Wilkinson

manufactured and marketed through Axis. Halliburton later added a claim for breach of fiduciary duty. Halliburton sought monetary damages and attorney's fees as well as equitable relief including a permanent injunction, declaratory judgment, and constructive trust. A jury unanimously found in favor of Halliburton on all its claims and awarded damages in the amount of $521,360 against Axis and $191,940.51 against Wilkinson. Halliburton filed a motion for judgment on the verdict in which it sought, in addition to judgment on the verdict for the monetary relief, both declaratory and injunctive relief under which Wilkinson and Axis would be permanently enjoined from using Halliburton's trade secrets and would be required to deliver to Halliburton all designs and other related materials that served as the basis for the wellbore plugs and component parts built by Wilkinson.

The trial court held a hearing on Halliburton's motion and signed a judgment on August 6, 2012 awarding monetary damages in the amount found by the jury. The judgment also contained a permanent injunction prohibiting Wilkinson and Axis from disclosing Halliburton's trade secrets and ordered Wilkinson and Axis to turn over all hard copies of documents, data, and information related to the wellbore plugs. With respect to use of the trade secrets, however, the judgment only enjoined Wilkinson and Axis for a period of ten months. The court did not render any declaratory relief. Halliburton filed a motion seeking to modify and supplement the judgment contending the ten month injunction provided inadequate relief and that it was entitled to a declaratory judgment as to its ownership of the wellbore plug designs. Halliburton further requested that Wilkinson and Axis be ordered to turn over and delete all electronic files containing information related to the plugs. On May 23, 2013, the trial court signed a second final judgment extending the duration of the injunction on Wilkinson and Axis's use of the trade secrets until November 2013 and adding an order that they provide Halliburton with copies of all

electronically stored or maintained information related to the plugs. Other than these two modifications, the judgment was unchanged. Halliburton then filed this appeal.

ANALYSIS

## A. Injunctive Relief for Trade Secret Misappropriation

In Halliburton's first issue on appeal, it contends the trial court erred in limiting the injunction on appellees' use of the misappropriated trade secrets to only eighteen months from the date of the jury's verdict. Halliburton argues that only a permanent perpetual injunction will remove the competitive advantage gained by appellees and provide Halliburton with complete relief from the consequences of the misappropriation.

### 1. *Standard of Review*

We review the trial court's grant or refusal of a permanent injunction to determine whether it clearly abused its discretion. *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ). The trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 402 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A trial court's clear failure to analyze and apply the law correctly constitutes an abuse of discretion. *See Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex. App.—Dallas 2009, no pet.).

### 2. *Established Facts*

Neither Wilkinson nor Axis appealed from the trial court's judgment. Accordingly, the following facts, as found by the jury based on the jury instructions, must be taken as established by the evidence:

(i) Wilkinson and Axis made unauthorized use of Halliburton's trade secrets.[1]

(ii) The trade secrets that Wilkinson and Axis misappropriated gave them an opportunity to obtain an advantage over competitors who did not know or use the misappropriated material.

(iii) The misappropriated trade secrets did not involve matters of public knowledge, readily available, or of general knowledge in the industry at the time of the misappropriation.

(iv) The misappropriated trade secrets involved a "substantial element" of secrecy that Halliburton took reasonable measures to protect.

(v) Wilkinson and Axis's use of the misappropriated trade secrets was more than slight and their designs cannot be said to have been derived from other sources.

(vi) Wilkinson failed to comply with his fiduciary duty to Halliburton and Axis knowingly participated in Wilkinson's breach of fiduciary duty.

---

[1] Factual determinations (i)–(v) above are from the jury's answers of "yes" to both parts of Question 1 in the jury charge which asked whether Wilkinson or Axis had misappropriated Halliburton's trade secrets. The question instructed the jury as follows:

> "Trade secret" means any process, compilation of information, formula, pattern, or device that gives a business an opportunity to obtain an advantage over competitors who do not know or use it. In order to be a "trade secret," there must be a substantial element of, though not absolute, secrecy and a party must take reasonable measures to protect the secrecy of its trade secrets. Matters of public knowledge, readily available, or of general knowledge in an industry at the time of the alleged misappropriation arc not "trade secrets." A "trade secret" need not be novel or unique and it may consist of a combination of simple and otherwise known components. The fact that a trade secret can be discovered by experimentation and other lawful means does not deprive its owner of protection from those acquiring it by improper means. The personal efficiency, inventiveness, skills and experience that an employee develops through work belong to the employee, not the former employer; however, trade secrets developed by the employee in the course and scope of his employment, and trade secrets disclosed to the employee by the employer, are the property of the employer, not the employee.

> Misappropriation of a trade secret does not require that defendant use the secret in exactly the form in which defendant received it; however, it must be substantially derived therefrom. A defendant may be liable even if he uses it with modifications or improvements upon it effected by his own efforts. Liability is avoided when the contribution of the trade secret is slight and the defendant's process can he said to have been derived from the other sources.

> A "confidential relationship" is a relationship where one party reposes confidence and special trust in another and is justified in placing such trust and confidence in the other party. The relationship is based upon fair dealing and good faith, rather than legal obligation. The question is whether the recipient of the information knew or should have known that the information was a trade secret and that disclosure was made in confidence.

> "Improper means" are means that fall below the generally accepted standards of commercial morality and reasonable conduct. The mere fact that knowledge of a product might be acquired through lawful means such as inspection, experimentation, and analysis does not preclude protection from those who would secure the knowledge by unfair means.

(vii) Wilkinson failed to comply with the Patent Agreement.

With these findings, the issues of the existence of Halliburton's trade secrets and appellees' wrongdoing with respect to those secrets were resolved in Halliburton's favor. The findings are binding on this Court. *See Solares v. Solares*, 232 S.W.3d 873, 880 (Tex. App.—Dallas 2007, no pet.) (citing *Exxon Corp. v. Tyra*, 127 S.W.3d 12, 16 (Tex. App.—Tyler 2003, pet. denied)); *see also Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147-WCB, 2014 WL 2980740, at *4 (E.D. Tex. July 2, 2014) (evidence inconsistent with jury findings cannot be considered in court's determination of propriety of equitable relief granted). Our review of this issue is limited, therefore, to determining whether the trial court acted arbitrarily and unreasonably or incorrectly applied the law to the facts as found by the jury when the trial court declined to enjoin appellees perpetually from using the misappropriated trade secrets.

### 3. Applicable Law

The appropriateness of granting injunctive relief against those who have misappropriated trade secrets has long been recognized. *See Hyde Corp. v. Huffines*, 314 S.W.2d 763 (Tex. 1958); *Elcor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204 (Tex. App.—Dallas 1973, writ ref'd n.r.e.). The scope of the injunctive relief "must, of necessity, be full and complete so that those who have acted wrongfully and have breached their fiduciary relationship, as well as those who willfully and knowingly aided them in doing so, will be effectively denied the benefits and profits flowing from the wrongdoing." *Elcor*, 494 S.W.2d at 212. The purpose of an injunction is to remove the advantage created by the misappropriation. *See Bryan v. Kershaw*, 366 F.2d 497, 502 (5th. Cir. 1966). Although an injunction should ordinarily operate as a corrective rather than a punitive measure, if a choice must be made between the possible punitive operation of an injunction and the failure to provide adequate protection of a recognized legal right, we must follow the course that provides adequate protection because "the undoubted tendency of the law

has been to recognize and enforce higher standards of commercial morality in the business world." *Hyde*, 314 S.W.2d at 773.

Historically, the "usual equitable order" in a trade secret misappropriation case is a perpetual injunction against the wrongdoer. *See id*. at 780–81. Appellees contend that the trend has been away from perpetual injunctions in favor of more limited "lead time" injunctions. After reviewing the relevant case law, however, we discern no such trend. *See Molex, Inc. v. Nolen*, 759 F.2d 474, 477 (5th Cir. 1985). Instead, there has merely been a recognition that a defendant may, in some cases, provide sufficient proof to show that an injunction of lesser duration than a perpetual injunction is adequate. *See Research Equip. Co. Inc. v. C. H. Galloway & Scientific Cages, Inc.*, 485 S.W.2d 953, 956 (Tex. App.—Waco 1972, no writ). For example, where a defendant shows at trial that the trade secrets at issue could be reverse engineered by someone with no background in the business or the confidential information was publically disclosed after the misappropriation, a trial court has discretion to grant a limited time injunction. *Id*. (ninety-day injunction upheld where design and construction of product was "based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced craftsman that might see one."). But the overriding concern remains the protection of the plaintiff's recognized legal rights. *See Hyde*, 314 S.W.2d at 773. The burden is on the defendant to show that an injunction for a period of time less than perpetual would be sufficient to achieve that end. *Id.* at 776.

### 4. *Appropriate Injunctive Relief*

The trade secrets claimed by Halliburton in this case involve, among other things, the results of certain tests done to develop its wellbore plugs as well as the use of a specific alloy, the plugs' dimensions, tolerances, heat treatment specifications, and their materials specifications. Appellees contend they presented ample evidence at trial, including patent applications and

expired patents, demonstrating the "common and public nature of the information that Halliburton sought to protect." The jury rejected this and similar arguments made by appellees at trial when the jury found in favor of Halliburton and awarded Halliburton the full amount of monetary damages it sought. In doing so, the jury necessarily found that Halliburton's claimed trade secrets did not involve matters of public knowledge, readily available, or of general knowledge in the industry at the time of the misappropriation.[2] Furthermore, although Halliburton obtained patents covering many aspects of its plug designs, Halliburton did not claim that any of the information contained in its patents was a trade secret.

Appellees also point to the testimony of several witnesses that discussed the feasibility of reverse engineering the plugs based on the information provided by the patents and an examination of the plugs themselves. The witness testimony on which appellees rely shows that a similar or workable plug could be reverse engineered within six months to a year. However, appellees point to no evidence demonstrating that wellbore plugs identical to those sold by Halliburton, and incorporating the multiple aspects for which Halliburton claimed trade secret protection, could be developed without extensive and costly research and experimentation. It is undisputed that appellees never attempted to reverse engineer the plugs at issue, but instead relied on the information they misappropriated from Halliburton to develop their plugs.

Appellees rely heavily on the Fifth Circuit's opinion in *Bryan v. Kershaw* to support their argument that a trend exists in granting limited time injunctions and such an injunction is proper in this case. *See Bryan*, 366 F.2d at 503. This reliance is misplaced. Although the court in *Bryan* upheld a limited time injunction against use of the trade secrets, the opinion does not

---

[2] Appellees presented evidence and argument to the jury that aspects of the wellbore plugs were not trade secrets because the technology was publicly available, and based on that, argued that various components of Halliburton's claimed damages should be rejected. The jury instruction encompassed these issues. *See supra* note 1. The jury's finding of misappropriation of trade secrets and award of the full amount of damages sought by Halliburton amounts to a rejection of appellees' arguments and evidence about these matters.

address whether a perpetual injunction was required to provide the plaintiffs with adequate protection of their legal rights because this issue was not raised. *Id.* Although the plaintiff in *Bryan* challenged the time limit placed on the injunction, the challenge was based solely on the procedural ground that a limited duration injunction was not supported by the pleadings. *Id.* The Fifth Circuit affirmed the injunction stating that the less restrictive rules of pleading in federal court applied. *Id.* at 504. The *Bryan* opinion focused primarily on the use of injunctive relief in general to remove the competitive advantage gained through misappropriation.[3] The court found particular guidance in the Texas Supreme Court's opinion in *K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*, 314 S.W.2d 782 (Tex. 1958).

In *K & G Oil Tool*, the supreme court stated that a defendant should not be allowed to gain information through a breach of confidence and "escape the efforts of inspection and analysis" necessary to produce a duplicate product. *K & G Oil Tool*, 314 S.W.2d at 788 (quoting Harry D. Nims, The Law of Unfair Competition and Trade Marks § 148 (3d ed. 1929)). Quoting a sixth circuit opinion, the supreme court further stated that "[t]he mere fact that the means by which a discovery is made are obvious . . . cannot . . . advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtains the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer." *Id.* (quoting *A.O. Smith Corp. v. Petroleum Iron Works Co.,* 73 F.2d 531, 538 (6th Cir. 1934)). The court made it clear in the opinion that injunctions are intended to correct more than just the lead time gained through misappropriation. They are intended to prevent a party from unfairly profiting from another's expense of time and resources. In many cases, a limited time injunction will not

---

[3] Appellees also point to the case of *Gonzales v. Zamora*, 791 S.W.2d 258 (Tex. App.—Corpus Christi 1990, no writ), to support their assertion of a trend in granting limited time injunctions and the sufficiency of such relief. As with *Bryan*, however, the issue of whether a perpetual injunction was necessary to afford the plaintiff complete relief was neither raised nor addressed. *Id.*

achieve the latter. An injunction of limited duration merely delays the use of misappropriated trade secrets. It does not prevent the defendant from enjoying the results of the plaintiff's investment without the necessity of a similar investment on his part.

In some cases, a product incorporating trade secrets may be a "simple device, widely circulated, the construction of which [is] ascertainable at a glance." *Id*. at 788. In such cases, a limited duration or "lead time" injunction may be sufficient to remove the competitive advantage gained by the misappropriation. This was the circumstance presented in *Research Equipment Co., Inc. v. C.H. Galloway & Scientific Cages, Inc.* In *Galloway*, an employee of a company that manufactured aluminum animal cages established a competing business using misappropriated trade secrets. *Galloway*, 485 S.W.2d at 954. The court affirmed the trial court's granting of a limited time injunction stating that the design and construction of the cages were based on obvious and easily imitated mechanical principles involving only a routine application of common skills and equipment. *Id*. at 956. In addition, the court noted that the plaintiff often furnished prospective purchasers with copies of drawings and plans for the cages and the market for the product was well-defined. *Id*. Because, under the facts of the case, no complex research or reverse engineering was required to develop an identical product with identical clientele, delaying the defendant's ability to market the product was all that was necessary to put him in the same position as other prospective sellers employing legitimate competitive means.

The same analysis applies when trade secret information becomes public and loses its trade secret status. Once trade secret information becomes available to the general public, a party that has been enjoined from using the information due to misappropriation may apply to have the injunction terminated. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003 (West 2013). The court may choose to continue the injunction for an additional reasonable period of time, however, to eliminate any commercial advantage derived from the misappropriation such

as possessing the trade secrets before other potential competitors. *Id*. Again, the injunction is intended to eliminate a wrongfully gained competitive advantage and put the defendant in the same position as other prospective sellers.

As stated above, the burden is on the defendant to show at trial that an injunction for a period of time less than perpetual will be adequate to protect the rights of the injured plaintiff. *See Hyde*, 314 S.W.2d at 775-76. Here, appellees made no showing that a delay in their ability to use the misappropriated information is all that is required to remove the competitive advantage they received from their wrongdoing. To the contrary, the evidence shows that extensive time and resources would be required to develop products similar to those being sold by Halliburton. Based on the instructions in the jury charge, the jury necessarily found that Halliburton's trade secrets did not involve matters of public knowledge, readily available, or of general knowledge in the industry; the trade secrets were not available to the public; and the incorporation of the trade secrets into the plugs made by appellees was more than slight and not derived from other sources. Appellees cannot be allowed to bypass the expense of research and development that would be required of every other competitor by simply waiting out the injunction period.

Appellees assert that a perpetual injunction would prevent them from ever designing wellbore plugs again and would stifle legitimate competition. This argument is without merit. Nothing prevents appellees from employing their own resources to develop and market a competing wellbore plug. Even Halliburton concedes that appellees would be free to resume making plugs while subject to a perpetual injunction so long as they do not employ Halliburton's trade secrets in the process. The only restriction on appellees is that they must stand in the same position as other legitimate competitors that do not have access to the protected information.

We conclude the trial court abused its discretion in refusing to grant Halliburton a perpetual injunction against appellees. The law is clear that injunctive relief for trade secret

misappropriation must be sufficient to protect the plaintiff's legal rights and remove the competitive advantage obtained through the misappropriation. *See Elcor*, 494 S.W.2d at 212. Appellees failed to show that anything less than a perpetual injunction would serve those purposes.

In addition to challenging the time limit on the injunction, Halliburton also contends the language of the injunction granted by the trial court is impermissibly vague and allows appellees to determine the extent to which they are enjoined. The portions of the injunction at issue read as follows:

> It is further **ORDERED, ADJUDGED, and DECREED** that Defendants Axis Technologies, LLC, and Brian Wilkinson, their officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment are hereby enjoined:
>
> . . .
>
> c. Now and for a period of 10 months hereafter, from manufacturing, marketing, delivering, selling, offering for sale, or announcing the actual or anticipated availability of any wellbore plugging device which Wilkinson and Axis Technologies have marketed or sold or currently market and sell as the Axis "BLACK" plug, to the extent that said plugging device is based upon or utilizes, in whole or in part, HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (*i.e.,* HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that is based upon or utilizes processes, designs or materials that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee); and
>
> d. Now and for a period of 10 months hereafter, from designing, manufacturing, selling or offering for sale—or assisting in designing, manufacturing, selling or offering for sale—any wellbore plugging device (namely, frac plugs, bridge plugs and packers), whether for the benefit of Defendants or for any other party, that is based upon or utilizes, in whole or in

–12–

part, HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (*i.e.*, HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee).

The specific wording about which Halliburton complains enjoins appellees from manufacturing, marketing, and selling their wellbore plug device "to the extent that said plugging device is based upon or utilizes, in whole or in part, [Halliburton's] confidential or trade secret information . . . ." Halliburton contends that this language impermissibly allows appellees to determine whether and to what extent the plug they developed is based on the misappropriated trade secrets.

"An injunction must be as definite, clear, and precise as possible and, when practicable, it should inform the defendant of the acts he is restrained from doing without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing." *Webb*, 298 S.W.3d at 384. Paragraph "d" of the injunction does not contain the "extent to" language and clearly enjoins appellees from designing, manufacturing, selling, or offering to sell "*any wellbore plugging device . . . that is based upon or utilizes, in whole or in part*," Halliburton's trade secrets. The jury found, and appellees have not challenged the finding, that the design of appellees' wellbore plug was derived from Halliburton's trade secrets and not derived from other sources. Accordingly, paragraph "d" enjoins appellees from further manufacturing or selling the plug in its entirety. Because paragraph "d" applies to all wellbore plugs that could be manufactured by appellees based upon or utilizing Halliburton's trade secret information, including the plug that is the subject of paragraph "c," the "to the extent that"

language in paragraph "c" is confusing at best and, at worst, conflicts with paragraph "d." For purposes of clarity, therefore, we conclude paragraph "c" of the injunction should be modified to strike the "to the extent that" qualifier as indicated in the conclusion paragraph of this opinion. We resolve Halliburton's first issue in its favor.

## B. Declaratory Judgment

In its second issue, Halliburton contends the trial court erred in failing to render a declaratory judgment that Halliburton is the owner of the plug designs and other related documents Wilkinson created while employed by Halliburton. Halliburton argues this is necessary to enforce Halliburton's contractual rights to ownership of the work done by Wilkinson during his employment with the company.

The contract signed by Wilkinson obligated him to turn over at the termination of his employment "all memoranda, notes, records, drawings or other documents made or compiled by [Wilkinson] or made available to him while employed by [Halliburton] concerning any process, apparatus, or product manufactured, used, developed, investigated, or considered by [Halliburton]." The contract deemed all such material to be Halliburton's property. The jury found that Wilkinson breached the contract and Halliburton was awarded the full amount of damages requested based on the breach. Halliburton contends that, absent a declaration of its contractual rights to the plug designs and other related documents created by, or made available to, Wilkinson during his employment with Halliburton, the controversy of ownership of those materials remains unresolved.

A declaratory judgment is a remedial measure that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations. *See Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 863 (Tex. App.—Dallas 2009, pet. denied). Where the undisputed evidence shows a party's entitlement to declaratory relief, it is error for the trial

–14–

court not to grant the relief requested. *See Cont'l Homes of Tex., L.P. v. City of San Antonio*, 275 S.W.3d 9, 21 (Tex. App.—San Antonio 2008, pet. denied). The trial court may refuse a declaratory judgment only where judgment would not remove the uncertainty giving rise to the proceedings. *See Scurlock Permian Corp. v. Brazos Cnty.*, 869 S.W.2d 478, 486 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Where a party has violated a confidence and breached a contract, "the injured party is entitled to full relief, both legal and equitable, unless there exists some compelling reason of public policy or practicability which directs the withholding of such relief." *See K & G Oil Tool*, 314 S.W.2d at 601–02.

Wilkinson admitted at trial, and does not dispute on appeal, that he created the designs for the wellbore plug manufactured by Axis while he was an employee of Halliburton. Wilkinson further admitted that he did not turn over his designs and the related materials when he left his employment. Under the terms of the contract, all materials created by Wilkinson during his employment with Halliburton concerning products developed or manufactured by the company are the company's property and he was required to turn those materials over to the company when his employment terminated.

Appellees focus on the second paragraph of the contract which requires Wilkinson to assign "his entire right, title, and interest in and to all inventions which relate to [Halliburton]'s business" to Halliburton. Appellees argue that, because there is no jury finding that Wilkinson's plug designs were "inventions," Halliburton is not entitled to a declaratory judgment of ownership. But the sixth paragraph of the contract, which requires Wilkinson to turn over all "memoranda, notes, records, drawings or other documents" as Halliburton's property makes no reference to "inventions." Halliburton contends that the materials for which it seeks a declaration of ownership are encompassed by the sixth paragraph. Because the sixth paragraph

–15–

does not require that the materials relate to an "invention," a jury finding on that issue was not required for Halliburton to be entitled to the declaratory relief it seeks.

Appellees contend that granting Halliburton the requested declaratory relief in addition to the money damages awarded would amount to a double recovery for breach of the contract. We disagree. A double recovery exists when a plaintiff is awarded more than one recovery for the same injury. *See Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). A monetary award that compensates a plaintiff for past damages combined with relief to prevent future damages does not constitute a double recovery. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 76–77 (Tex. App.—San Antonio 2011, no pet.). In this case, the monetary award to Halliburton was for past damages suffered as a result of Wilkinson's breach. The requested declaratory judgment is intended to prevent future damages caused by Wilkinson's continued refusal to recognize Halliburton's ownership of the designs and other related documents created during the term of his employment. Because the evidence and the terms of the contract show that those materials are Halliburton's property and a declaratory judgment to that effect would afford relief from future uncertainty regarding the legal rights to that property, we conclude the trial court erred in refusing to grant Halliburton a declaratory judgment.

In addition to the declaration of ownership of the materials, Halliburton requests an order compelling appellees to destroy all electronic copies of the materials as a necessary corollary to the declaratory relief. Appellees contend that this request is essentially an attempt to obtain further injunctive relief and, therefore, Halliburton must show that the trial court abused its discretion in refusing to grant the request.[4]

---

[4] We note that Halliburton consistently pleaded its request for declaratory judgment relief within its request for injunctive relief.

A declaration of exclusive ownership of the property at issue would be illusory if appellees were permitted to retain copies. Although the trial court's judgment orders appellees to turn over all copies of the materials, its failure to order appellees to destroy its electronic copies effectively denies Halliburton its contractual right to exclusive ownership. Because the evidence showed Halliburton had a contractual right to exclusive ownership of the property, the trial court abused its discretion in failing to order appellees to destroy all electronic copies of the materials in their possession. We resolve Halliburton's second issue in its favor.

## CONCLUSION

Based on the forgoing, we reverse the portion of the trial court's judgment denying Halliburton's requests for injunctive and declaratory relief. We modify the trial court's judgment as follows:

(1) The paragraph immediately preceding paragraph "a" on page 2 of the final judgment is modified to state: "It is further **ORDERED**, **ADJUDGED**, **and DECREED** that Defendants Axis Technologies, LLC, and Brian Wilkinson, their officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment are hereby permanently enjoined:"

(2) Paragraph "c" of the injunction[5] is modified to state: "Now and forever hereafter, from manufacturing, marketing, delivering, selling, offering for sale, or announcing the actual or anticipated availability of any wellbore plugging device which Wilkinson and Axis Technologies have marketed or sold or currently market and sell as the Axis "BLACK" plug proven at trial to be based upon or utilize, in whole or in part,

---

[5] Although Halliburton requested this court to remand to the trial court with instructions to issue an injunction, our modification of the judgment will obviate the need for remand and, accordingly, we render judgment. *See* Tex. R. App. P. 43.3(a); *see also Elcor*, 494 S.W.2d at 214 (rendering judgment of modified injunction in trade secrets case).

HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (i.e., HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that is based upon or utilizes processes, designs or materials that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee);"

(3) Paragraph "d" of the injunction is modified to state: "Now and forever hereafter, from designing, manufacturing, marketing, selling or offering for sale—or assisting in designing, manufacturing, selling or offering for sale—any wellbore plugging device (namely, frac plugs, bridge plugs and packers), whether for the benefit of Defendants or for any other party, that is based upon or utilizes, in whole or in part, HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (i.e., HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that

–18–

Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee).";

(4) Paragraph "a" beginning on page 5 of the judgment is modified to read "It is further **ORDERED, ADJUDGED, and DECREED** that Plaintiff HESI is the owner of all designs and other related documents made or compiled by Defendant Brian Wilkinson, or made available to him while employed by HESI, and Defendants Axis Technologies, LLC and Brian Wilkinson shall, within 21 days of this Final Judgment:  a. Deliver to HESI or make available for collection by HESI, all hard and electronic copies of all documents, data, and information related to the development, design, and sale of Axis wellbore plugs, including but not limited to plugs that Defendants have marketed as the Axis "BLACK" plug, to the extent that said documents, data, and information contain or utilize, in whole or in part, HESI's confidential or trade secret information or processes, designs or materials that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee).  No later than the day of such turnover, Defendants Axis Technologies, LLC and Brian Wilkinson shall destroy all electronic copies still in either of their possession."

As modified, the trial court's judgment is affirmed.

/David Evans/

DAVID EVANS
JUSTICE

130854F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

HALLIBURTON ENERGY SERVICES, INC., Appellant

No. 05-13-00854-CV     V.

AXIS TECHNOLOGIES, LLC AND BRIAN WILKINSON, Appellees

On Appeal from the 95th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-00267-D.
Opinion delivered by Justice Evans.
Justices Fillmore and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED IN PART** and **MODIFIED** as follows:

(1) The paragraph immediately preceding paragraph "a" on page 2 of the final judgment is modified to state: "It is further **ORDERED**, **ADJUDGED**, **and DECREED** that Defendants Axis Technologies, LLC, and Brian Wilkinson, their officers, agents, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment are hereby permanently enjoined:"

(2) Paragraph "c" of the injunction is modified to state: "Now and forever hereafter, from manufacturing, marketing, delivering, selling, offering for sale, or announcing the actual or anticipated availability of any wellbore plugging device which Wilkinson and Axis Technologies have marketed or sold or currently market and sell as the Axis "BLACK" plug proven at trial to be based upon or utilize, in whole or in part, HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (i.e., HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that is based upon or utilizes processes, designs or materials that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee);"

(3) Paragraph "d" of the injunction is modified to state: "Now and forever hereafter, from designing, manufacturing, marketing, selling or offering for sale—or assisting in designing, manufacturing, selling or offering for sale—any wellbore plugging

device (namely, frac plugs, bridge plugs and packers), whether for the benefit of Defendants or for any other party, that is based upon or utilizes, in whole or in part, HESI's confidential or trade secret information relating to (i) the design, manufacture, and placement of specialized components of HESI wellbore plugging devices (i.e., HESI frac plugs, bridge plugs and packers); (ii) engineering and test information for HESI wellbore plugging devices or the components thereof; (iii) the specific material properties, alloys, and compositions used in the manufacture of HESI wellbore plugging devices and components thereof; and (iv) any other information related to HESI's wellbore plugging devices that HESI owns and treats as secret or confidential, or that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee).";

(4) Paragraph "a" beginning on page 5 of the judgment is modified to read "It is further **ORDERED, ADJUDGED, and DECREED** that Plaintiff HESI is the owner of all designs and other related documents made or compiled by Defendant Brian Wilkinson, or made available to him while employed by HESI, and Defendants Axis Technologies, LLC and Brian Wilkinson shall, within 21 days of this Final Judgment: a. Deliver to HESI or make available for collection by HESI, all hard and electronic copies of all documents, data, and information related to the development, design, and sale of Axis wellbore plugs, including but not limited to plugs that Defendants have marketed as the Axis "BLACK" plug, to the extent that said documents, data, and information contain or utilize, in whole or in part, HESI's confidential or trade secret information or processes, designs or materials that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee, but did not disclose or assign to HESI (including any enhancements, modifications, or derivations of any of the processes, machines, manufactures, or composition of matter of those that Wilkinson conceived, devised, or invented, in whole or in part, while he was a HESI employee). No later than the day of such turnover, Defendants Axis Technologies, LLC and Brian Wilkinson shall destroy all electronic copies still in either of their possession."

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellant HALLIBURTON ENERGY SERVICES, INC. recover its costs of this appeal from appellees AXIS TECHNOLOGIES, LLC AND BRIAN WILKINSON.

Judgment entered this 21st day of August, 2014.